[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

Nos. 16-13779-J;  16-14615-J

————————————————

IN RE: ANTRONE DAVIS,

                                                                            Petitioner.


————————————————

Application for Leave to File a Second or Successive
Motion to Vacate, Set Aside,
or Correct Sentence, 28 U.S.C. § 2255(h)

————————————————

Before: MARTIN, JULIE CARNES, and JILL PRYOR Circuit Judges

ORDER:

Antrone Davis has filed two pro se application for permission to file a

28 U.S.C. § 2255 motion based on Johnson v. United States, 576 U.S.____, 135

S. Ct. 2551 (2015).  Because Davis already filed one § 2255 motion, his new

motion must be "certified as provided in section 2244 by a panel of the appropriate

court of appeals to contain . . . a new rule of constitutional law, made retroactive to

cases on collateral review by the Supreme Court, that was previously unavailable."

28 U.S.C. § 2255(h)(2).  "The court of appeals may authorize the filing of a second

or successive application only if it determines that the application makes a prima

facie showing that the application satisfies the requirements of this subsection." Id. § 2244(b)(3)(C).

When a prisoner seeks permission to file a second or successive § 2255 motion based on Johnson, "[w]e may only deny the application if it is clear that the motion will not contain a Johnson claim." In re Rogers, ___ F.3d ___, ___, 2016 WL 3362057, at *1 (11th Cir. June 17, 2016) (per curiam). This can happen in two ways. First, the application may be denied if "the sentencing court record demonstrates that the sentencing court specifically identified three prior convictions as qualifying as ACCA predicates under the elements or enumerated crimes clauses, or based on the 'serious drug offense' provision." Id. Second, the application may be denied if, "under binding precedent, it is clear that the prior convictions the sentencing court identified categorically qualify as ACCA predicates under the elements or enumerated crimes clauses." Id. But if "the record does not make clear that the sentencing court relied solely on ACCA's still-valid provisions to classify each predicate offense and binding precedent does not otherwise demonstrate that only valid ACCA clauses are implicated," then the applicant must be granted permission to file his § 2255 motion. Id.

Davis has made the "prima facie showing" required by § 2244(b)(3)(C). Davis's presentence investigation report did not specify which of Davis's prior convictions would serve as predicates for his ACCA sentence. And at the sentence

2

hearing, the judge observed that Davis was convicted of burglary after he was found inside a stolen car. Though "burglary" is listed under ACCA's "enumerated crimes clause," a state burglary crime meets that definition only if the state crime has "the basic elements of unlawful or unprivileged entry into, or remaining in, a *building or structure*, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 599, 602, 110 S. Ct. 2143, 2158, 2160 (1990) (emphasis added). Since Davis was convicted of burglarizing a car rather than "a building or structure," his crime could not have required those elements. This means Davis's ACCA sentence may be invalid due to Johnson.

We recognize that Davis is serving both a 327-month ACCA sentence and a separate but concurrent 327-month sentence for conspiracy to possess cocaine with intent to distribute. We have held that a Johnson application can be denied "if a defendant has concurrent sentences on multiple counts of conviction . . . unless the defendant would suffer 'adverse collateral consequences.'" In re Williams, ___ F.3d___,___, 2016 WL 3460899, at *4 (11th Cir. June 24, 2016) (quotation omitted). Williams applied the "concurrent sentence doctrine," which "provides that, if a defendant is given concurrent sentences on several counts and the conviction on one count is found to be valid, an appellate court need not consider the validity of the convictions on the other counts." United States v. Fuentes–Jimenez, 750 F.2d 1495, 1497 (11th Cir.1985) (per curiam). The Supreme Court

3

has suggested that this doctrine's only "continuing validity" is as a "rule of judicial convenience." Benton v. Maryland, 395 U.S. 784, 791, 89 S. Ct. 2056, 2061 (1969). Benton also observed that no precedent gave a "satisfactory explanation for the concurrent sentence doctrine." Id. at 789 S. Ct. at 2060. And it warned that "whatever the underlying justifications for the doctrine, it seems clear to us that it cannot be taken to state a jurisdictional rule." Id. at 789–90, 89 S. Ct. at 2060.

Williams does not apply here. The applicant in Williams "received a concurrent mandatory life sentence on Count 1 that was unrelated to his ACCA status." Williams, 2016 WL 3460899, at *4. Unlike in Williams, Davis's 327-month sentence on his conspiracy conviction was neither "mandatory" nor "unrelated to his ACCA sentence." In Williams, the sentencing judge was required to impose a sentence of life in prison, regardless of ACCA. The minimum sentence for Davis's conspiracy conviction was 5 years. Unlike the mandatory minimum *life* sentence in Williams, this was far short of the 15-year minimum for Davis's ACCA violation. Also, this is not a case where the applicant's non-ACCA sentence "was unrelated to his ACCA status." Id. To the contrary, the judge sentenced Davis based on a single Sentencing Guidelines range for Davis's ACCA violation combined with his conspiracy crime. The judge's sentencing decision was therefore no doubt informed by Davis's ACCA designation, which means

4

Davis may have suffered "adverse collateral consequences" if his ACCA sentence turns out to be unlawful. Id.

We therefore hold that Davis's application "contain[s] . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2255(h). As usual, "[t]his is a limited determination on our part, and, as we have explained before, the district court is to decide the § 2255(h) issues 'fresh, or in the legal vernacular, de novo.'" In re Moss, 703 F.3d 1301, 1303 (11th Cir. 2013) (quoting Jordan v. Sec'y, Dep't of Corr., 485 F.3d 1351, 1358 (11th Cir. 2007)). That court owes no "deference to a court of appeals' prima facie finding that the requirements have been met." Jordan, 485 F.3d at 1357. Also, whatever

> determination that the district court makes about whether [Davis] has satisfied the requirements for filing a second or successive motion, and any determination it makes on the merits, if it reaches the merits, is subject to review on appeal from a final judgment or order if an appeal is filed. Should an appeal be filed from the district court[']s determination, nothing in this order shall bind the merits panel in that appeal.

Moss, 703 F.3d at 1303.

**APPLICATION GRANTED.**

JULIE CARNES, Circuit Judge, Dissenting:

The majority grants Antrone Davis's application to file a second or successive § 2255 application challenging his sentence enhancement under the Armed Career Criminal Act [ACCA], even though success on this motion will not undo any conviction that he has incurred or affect at all the sentence that he will still have to serve even should the enhancement be removed. In short, this grant will require an already busy district court and the parties to expend time on a futile venture: an exercise that is unnecessary given precedent permitting us to apply the concurrent sentence doctrine. I therefore respectfully dissent.

In 2002, Davis was convicted by a jury of possession of a firearm by a convicted felon (Count 1); possession of a controlled substance with the intent to distribute (Count 2); and using or carrying a firearm during a drug-trafficking offense (Count 3). He was subject to a minimum 5-year sentence for his conviction on Count 3 for carrying a firearm during a drug-trafficking offense, which sentence was required to run consecutively to the sentences imposed on Counts 1 and 2. The district court imposed that 5-year consecutive sentence as to Count 3, and it is not at issue here.

As to the drug charge in Count 2, the Presentence Investigation Report (PSR) recommended that Davis be sentenced as a career offender under the Sentencing Guidelines. The PSR noted that a defendant is a career offender when

the offense of conviction is a controlled substance offense and the defendant has at least two prior felony convictions for a crime of violence or a controlled substance offense. The PSR noted that Davis had two such convictions: a 1995 conviction for the sale of cocaine and a 1995 conviction for resisting an officer with violence. Accordingly, the PSR indicated that Davis's adjusted offense level was a 34, under § 4B1.1(B).

For purposes of Count 1 (the § 922(g) offense), the PSR indicated that Davis was an armed career criminal subject to the enhancement provided in 18 U.S.C. § 924(e) because he had at least three prior convictions for violent felonies. It did not identify the convictions supporting an ACCA enhancement.

At the sentencing hearing, Davis conceded that the career offender enhancement under the Guidelines should apply. He, however, contested the existence of a third predicate felony necessary to render him an armed career offender under the ACCA, albeit acknowledging that the court's determination on that point would not change the sentencing calculation.

The colloquy between the court and counsel as to a potential third predicate felony for ACCA purposes focused on only one conviction: Davis's 1991 conviction for burglary of a structure/conveyance. According to the PSR, Davis was discovered by police inside an automobile that he acknowledged was stolen. During the colloquy, the district judge expressed uncertainty as to why this

burglary conviction would qualify as a predicate offense. He twice quoted verbatim the definition for a violent felony set out in § 924(e), which included the residual clause that was later struck by the Supreme Court in *Johnson*.[1] Then stating, "It sounds to me like it is covered," the judge agreed that the ACCA enhancement should apply.

The PSR indicated that the career offender enhancement resulted in an adjusted offense level of 34, which when combined with a criminal history category of VI, yielded a sentencing range of 262–327 months. The PSR did not set out the offense level for the ACCA enhancement, but the Guidelines indicate, in pertinent part, that the offense level for that enhancement is the greater of the offense level for career offender or either a 33 or 34. *See* U.S.S.G. § 4B1.4 (b). Thus, the offense level triggered by the ACCA enhancement was also a level 34, yielding the same sentencing range as that for a career offender under the Guidelines, and the sentence ultimately imposed by the district court confirms this to be so. Ultimately, the district court imposed a 327-month sentence on both Counts 1 and 2, to run concurrently with each other, and a 60-month sentence on Count 3, to run consecutively. In imposing a sentence at the high end of the range, the district court set out, in detail, Davis's long and violent criminal history.

---

[1] *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551 (2015).

The colloquy described above suggests that the district court relied on the residual clause in identifying a third predicate conviction for purposes of applying an ACCA enhancement as to the § 922(g) sentence. Thus, like the majority, I conclude that Davis has shown that, in violation of *Johnson*, the residual clause was likely used by the district court to count a prior conviction as an ACCA predicate offense. But unlike the majority, I do not conclude that Davis has shown that he would benefit from a *Johnson* challenge based on this fact. Why? Because the district court ran the 327-month sentence for Count 2, in which Davis was deemed a career offender, concurrently with the 327-month sentence imposed on Count 1, in which Davis was subject to an ACCA enhancement. And the sentence based on Davis's career offender status is not vulnerable to a *Johnson* challenge.

In reaching this conclusion, I act under the assumption that *Johnson* and *Welch* could potentially apply to invalidate a defendant's designation as a career offender under the Sentencing Guidelines if the residual clause of the Guidelines' definition of a crime of violence was used in counting a prior conviction as a predicate crime of violence.[2] Yet, were Davis here leveling a *Johnson* challenge to the Guidelines' enhancement for career offender status, he would clearly lose and, in fact, we would hold that he had not even made a *prima face* case as to such a

---

[2] Our precedent, however, indicates that *Johnson*, which invalidated the residual clause in the definition of a violent felony under the ACCA, does not apply to invalidate the residual clause in the Guidelines career offender provision. *See United States v. Matchett*, 802 F.3d 1185 (11th Cir. 2015); *accord In re Griffin*,____F.3d____, 2016 WL 3002293 (11th Cir. May 25, 2016).

challenge. We would reach that conclusion because, without any reliance on a residual clause, Davis clearly has two predicate convictions that render him a career offender.

Specifically, Davis's prior predicate drug conviction is obviously unaffected by *Johnson*'s holding regarding the proper definition of a crime of violence. As to his second predicate offense, a Florida conviction for resisting an officer with violence, we have held, since *Johnson*, that such a conviction categorically qualifies as a violent felony for ACCA purposes, meaning that it would likewise qualify as a crime of violence for career offender purposes. *See United States v. Hill*, 799 F.3d 1318, 1322–23 (11th Cir. 2015).

In short, even if we were considering in this current application a *Johnson* challenge to the district court's application of the Guidelines' career offender enhancement, Davis could not make a *prima facie* showing that *Johnson* impacted that sentencing decision because he clearly had two qualifying predicate offenses. That being so, any success by Davis in validating his 327-month ACCA sentence on Count 1 will gain him nothing because the concurrent 327-month sentence based on Count 2 is unaffected by *Johnson* and remains valid.

In fact, in *In re Williams*, Nos. 16-13013, 16-13232,\_\_\_\_F.3d\_\_\_\_, 2016 WL 3460899 (11th Cir. June 24, 2016), we denied a federal prisoner's application to file a successive § 2255 motion challenging a sentence based on an ACCA

10

sentencing enhancement because the prisoner had also received a concurrent life sentence that was unrelated to the ACCA sentence that he sought to challenge. In doing so, we relied on the concurrent sentence doctrine and explained that when "a defendant has concurrent sentences on multiple counts of conviction and one count is found to be invalid, an appellate court need not consider the validity of the other counts unless the defendant would suffer 'adverse collateral consequences from the unreviewed conviction.'" *Id.* at \*4 (quoting *United States v. Bradley*, 644 F.3d 1213, 1294 (11th Cir. 2011). Because Williams had received a concurrent sentence on a count that was "unrelated to his ACCA status" and "unaffected by *Johnson*," we concluded that he was "unable to show that he would 'benefit' from *Johnson*" and his effort to file a successive § 2255 motion would be "an exercise in futility." *Id* at \*5.

So, it is here. Davis is serving a concurrent 327-month sentence for which *Johnson* offers him no relief and that is unaffected by any error in the ACCA-designation,[3] meaning that even if his ACCA sentence is reduced, Davis will still be serving the same 327 months. Accordingly, I respectfully dissent from the decision to grant this application.

---

[3] The majority reads *Williams* as being limited to cases in which the unchallenged concurrent sentence results from a mandatory penalty set by statute. I do not read *Williams* as so limited. It is true that this happened to be the scenario in *Williams*. But one could envision other scenarios in which the valid, concurrent sentence was not a mandatory sentence set by statute. In such cases, if the valid, concurrent sentence was unrelated to the prisoner's ACCA status and not potentially affected by the decision in *Johnson,* then *Williams* would control and the concurrent sentence doctrine would apply.